WALTER D. BARRINGTON, by his Guard'n, *v.* THE NEUSE RIVER FERRY COMPANY.

Under the Act of 1813, the County Court had no authority to make an irrevocable grant of an exclusive ferry.

And the General Assembly, by its Act of 1872, granting to a company the privilege of establishing a ferry, within two miles of another which had been used for over forty years, did not divest any vested right belonging to the owner of such old ferry.

Article 8, sec. 2, of the Constitution, giving to the commissioners of counties a general supervision and control over schools, roads, bridges, &c., does not deprive the Legislature of the power of special legislation over these subjects

The Legislature, under its right of eminent domain, has the power to grant the franchise of a ferry to any one, and to authorize the condemnation of the land of a riparian owner as a landing place.

(*Pipkin* v. *Wynns*, 2 Dev. 402; *Saunders* v. *Hathaway*, 3 Ired. 402; *Taylor* v. *W. & M. R. R. Co.*, 4 Jones, 277, cited and approved.)

APPLICATION for an injunction, heard before *Watts, J.*, holding the Special (January) Term, 1873, of CRAVEN Superior Court.

The plaintiff, an infant, claims to be the owner of a public ferry across Neuse river, which has been in use by the public for over forty years, and alleges that the defendants,

a private corporation, under authority of a law passed by our General Assembly, 17th January, 1872, are preparing to open another ferry within one and a half miles from the plaintiff's, and that defendants by virtue of said Act have taken possession of some of the plaintiff's land to enable them to open the said ferry.

There are many other allegations *pro* and *con*, and much evidence filed with complaint and answer; not being pertinent, however, to the point, upon which a decision of the case rests in the Court, such allegations and affidavits are not reported.

The Judge below refused to grant the injunction, and dismissed the complaint.

Plaintiff appealed.

*Haughton*, for appellant:—

Plaintiff claims under prescription, right of ferry, &c., for more than forty years is the owner of the land on which his ferry is located, and *also owner* of the land on which the defendants have located their ferry.

Defendants claim under a charter of the General Assembly:

1. It is insisted that the Constitution, Art. 7, sec. 2, which provides that the county commissioners shall exercise a general *supervision* and *control* of the penal and charitable institutions, roads, bridges, &c., as may be prescribed by law, confers a general and exclusive jurisdiction over bridges, ferries, &c., as may be prescribed by law, and that it contemplates a general *system* applicable to all parts of the State, and requires the Legislature to prescribe a general and uniform system by which roads, bridges and ferries shall be established by law.

It had a two-fold object:

1. To prevent an unnecessary consumption of time by the Legislature in relation to matters of this sort.

2. Because it was very wisely considered that matters of this kind, as one strictly of county police, could be much better managed by the county commissioners, who have knowledge of all the facts, and thereby to prevent the Legislature from being imposed upon as they often will be in matters of this description.

Independent of this provision, and before the adoption of the present Constitution, the principle is recognized by our Supreme Court, that where a ferry is established by law, if the right is shown to have existed and enjoyed long enough to raise the presumption of an original grant from the Legislature, or by the act of the County Court, such party was by virtue of the common law entitled to his action for damages for withdrawing his customers from his ferry. *Taylor* v. *W. & M. R. R. Co.*, 4 Jones, 277. And this right of action is applied to that case, although the defendants (as here) claim under a charter from the Legislature.

The law will never sacrifice individual interest unless it is manifestly for the public good, and when, as in this case, the defendants claim to do or intend to do an act that will promote the public convenience and interest, and that there is a necessity for the new ferry that must be shown, and this is expressly disproved by the affidavits and the memorials or petitions, made part of the plaintiff's case.

In the language of the Court in *Beard & Merrill* v. *Long*, 2 N. C. Law Repository p. 71, the plaintiffs may say to the law you have granted to me the right of a ferry many years ago, which has always been and is now in good repair, I have been at great expense, or that it was understood between us both that my interest should not be impaired but for my own neglect, &c., and I invite particular attention to the whole opinion of the Court in this case.

Again, as the plaintiff is the owner of the land on which

his is located, as well as that on which defendants propose to establish their ferry, if there is necessity for another ferry, the Legislature cannot take the land of the plaintiff and grant it, or the use of it to the defendants, unless plaintiff has the opportunity first allowed him to establish the new ferry on his own land, and unless it appears : 1st. That there is a real public necessity for the new ferry ; 2d. That plaintiff, as owner of the land, has been called upon to establish this new ferry, and has refused or failed to do so. *Pipkin* v. *Wynns*, 2 Dev. Rep. 402.    Hence the charter under which defendants claim is null, because it violates these two principles, and because it violates vested rights.    *Hoke* v. *Henderson*, 4 Dev. Rep. 17.

*Green*, contra.

RODMAN, J.    The plaintiff claims an exclusive right of ferriage between a certain point on the north side of Neuse river and the city of Newbern, and within a reasonable distance above and below that line.    He says that the defendants, under an Act of Assembly ratified 25th of January, 1872, threaten to establish a ferry between Newbern and a point on the north side of Neuse river, about one and a half miles above his terminus on that side of the river.

The proposed ferry will materially interfere with his rights and destroy his profits, and he asks for an injunction against its establishment.

At an early period the General Assembly gave to the County Courts the power " to appoint and settle ferries, and to order the laying out of public roads, and to appoint where bridges shall be made, and to discontinue such roads," &c. Rev. Stat. chap. 104, sec. 1 ; Act 1784, chap. 227, sec 1.

In 1813 it was enacted that the County Courts should not appoint or settle any ferry or lay out, discontinue or alter any public road except on petition and after notice to all

persons over whose lands the road may pass, or whose ferry theretofore established should be within two miles of the ferry proposed to be established, and thereupon the Court shall have full power to appoint and settle the said ferry, and to lay out, alter or discontinue the roads. A right to appeal was given to the Superior Courts. Rev. Stat. chap. 104, sec. 2, 3; Rev. Code chap. 101.

Whether the Court by appointing a ferry to a particular person and establishing rates of toll, thereby granted to him an exclusive franchise which the Court reserved the power to regulate, but which neither the Court nor the General Assembly could deprive him of, or materially impair without compensation ; or whether the right remained in the State by any of its organs to discontinue or alter the ferry or to establish a new one in proximity to it, whenever the public interest or convenience might require, we believe has never been precisely determined in this State. Nor has it been determined whether such a grant, without words of inheritance, descended to the heirs, or whether it was necessarily appurtenant to a particular piece of land so as to be prescribed for as a *que* estate.

We do not propose to touch upon any of these questions any further than may be necessary for the purposes of the present case. The plaintiff does not produce any record of an appointment from the County Court except an order made in 1866 fixing certain rates of toll which Stephen G. Barrington (an ancestor of plaintiff) was allowed to charge at the ferry claimed by plaintiff.

He alleges that he, and those under whom he claims, for forty years or more before the acts of the defendant complained of, and before the Act of 1872, have used and had the exclusive right of ferriage set forth.

There can be no doubt that a grant from the County Court, as well as from the State directly, or from an individual, may be proved by an user for forty years or even less. *Pip-*

*kin* v. *Wynns*, 2 Dev. 402; *Saunders* v. *Hathaway*, 3 Ired. Eq. 402. It is assumed, if not decided, in those cases, that an appointment of a ferry to a particular person, when the appointment is general, as it must be where it is proved by prescription only, is the grant of a franchise in fee, which passes to the heirs.

It is decided that the franchise is an exclusive one not only between the particular termini, but for a reasonable distance above and below the usual line of passage. The Act of 1813 is not alluded to in those cases, (perhaps because the user began before 1813) and the Court seems to have assumed that the English common law respecting ferry franchises existed in North Carolina. What that law is may be seen in the dissenting opinion of STORY, J., in *Charles River Bridge Company* v. *Warren Bridge*, 11 Pet. 583.

What that reasonable distance is the Court had no occasion to consider, as in both cases the termini were identical, or in very close proximity. Perhaps no better determination of it can be made than what is implied in the Act of 1813, viz: two miles on either side of the line of passage. The defendant's ferry is within that distance. The Act of 1764, Rev. Code chap. 101, sec. 60, is confined to *unauthorized* persons, and to those who take pay. *Taylor* v. *W. & M. R. R. Co.*, 4 Jones 277.

Then on these principles, assuming the facts alleged by the plaintiff to be true, they establish a grant to him of an exclusive ferriage between the prescribed termini, and for two miles on either side thereof.

As to the tenure by which the franchise is held, the more important question remains whether it is a perpetual vested right which the State cannot divest without compensation, or whether it was a grant with a power to regulate, to impair, and even to revoke at pleasure, reserved. There is no decision on the question in this State. In an anonymous case in 1 Hay. 457 (1797) the question arose: HAYWOOD, J.,

said that orders for keeping ferries were like the King's grants—they were exclusive—and the County Court had no right by a second grant to establish a ferry so near a former one as to injure its profits. But STONE, J., said the Courts could establish two ferries at the same place, and no decision was given.

In *Beard* v. *Long*, 2 C. L. Rep. 69 (1815) the Court evidently considered that the County Court had the *right* to establish a second ferry in close proximity to an older one, but refused the application for reasons of expediency.

In *Pipkin* v. *Wynns*, 2 Dev. 402, the County Court had assumed to take away an old ferry from the plaintiff who owned it by prescription, and also owned the land on both sides of the river, and to give it to the defendant without compensation; and no notice was given as required by the Act of 1813. The Court declare the second grant void, and put the decision on the ground that the right to use the land at the termini could not be taken from the owner without compensation, which was undoubtedly correct. But it is not said that compensation must also have been made for the ferry franchise as distinct from the ownership of the land. In *Saunders* v. *Hathaway*, 3 Ired. Eq. 402, the plaintiff's bill was brought in 1844. There was no proof of a grant, but in 1801, the County Court had rated his ferry, and he had constantly since continued in the use and enjoyment of the ferry, or of a bridge which he erected in its place. The defendant without any authority erected a bridge " about two miles " from it. The Court enjoined the defendant from opening his bridge. As the defendant was without authority, the decision is not in point to the present case, but the Court say " the truest policy therefore, as well as good faith to the plaintiff, might forbid the County Court from granting the defendants an order for their bridge," &c. " From the nature of the subject the necessity for a new ferry or bridge is like that for a road, to be judged of by the

public authorities, and that decision must be final. In this State the jurisdiction to appoint and settle ferries, &c., is conferred on the County Courts. Therefore whoever sets up a ferry or builds a toll bridge, knows that he does so subject to the future action of the County Court or Legislature in authorizing other ferries or bridges at other points on the same stream, though so near to his own as to interfere with his tolls. But one may very°willingly trust to the benign respect of the regular tribunals of the country," &c.

The question being seen to be clear of the controlling authority of any decided case, is open to be considered on the Act of 1813. Rev. Code, chap. 101, secs. 1, 2, 3.

Without resorting to any aid from the principle that nothing is implied in a grant from the State, (11 Pet. 547–8,) and assuming that the County Court granted all that they were authorized to grant, we think that the Court had no power to make an irrevocable grant of an exclusive ferry. Section 1 gives the Court power to settle and discontinue a ferry. Section 2 requires notice to be given of the petition for a new ferry within two miles, which necessarily implies the power to establish the new ferry on such terms as to the Court shall seem just. This construction is in accordance with the *dicta* above cited, and no reasonable objection can be urged against it. The grantee took the estate with its known instability. In the language of RUFFIN, J., he trusted to the "benignant respect" of the Legislature for his protection. We are of opinion that the Legislature did not divest any vested right in allowing a new ferry within two miles of the plaintiff's.

That is all which the Act of 1872 does. It does not give to the defendant any exclusive right; it does not exclude the plaintiff from his right of taking tolls; it only establishes a new ferry with a similar right in another person. If the Act had taken from the plaintiff without compensation his right to carry passengers for pay between his usual

termini, that might have been a different question, on which we express no opinion.

The counsel for the plaintiff further contends that the Constitution, Art. VII., sec 2, which gives to the commissioners of counties a general supervision and control over the schools, roads, bridges, &c., of their counties as may be prescribed by law, deprives the Legislature of the power of special legislation over those subjects. This construction would deprive the Legislature of too considerable a part of the powers usually exercised, to permit us to impute such an intention except upon express words. The clause, like many others in the Constitution, is addressed to the Legislature alone, and if disregarded (though we do not say it has been in this instance) cannot be enforced.

The counsel objects to the validity of the Act on a third ground, viz: that it authorizes the defendant to locate the northern terminus of their ferry on the land of the plaintiff, and that they have actually so located it.

For this, he relies on *Pipkin* v. *Wynns*, in which HENDERSON, J., says the County Court before granting the ferry to the defendant should have offered it to the plaintiff, who by owning the land on *both* sides of the river had a preferable right. But this is said in reference to the ownership in that particular case, and rather as a statement of what was equitable and just, than of positive obligation beyond the power of the Legislature to disregard. There can be no doubt of the power of the Legislature under its right of eminent domain to grant the franchise of a ferry to any one, and to authorize the condemnation of the land of a riparian owner as a landing place. It is analogous to condemnation for a public road. There is no obligation on the Legislature, at least, none which the Courts can enforce, to offer the franchise first, to the riparian owner.

Of course there must be compensation. And it seems that condemnation for a public road does not authorize the

grantees of a ferry franchise to use the land as a landing place.

There are several authorities that the right of preference in the owner of the bank on both, or either side of a river, is the creation of a statute, and does not exist independently.

Some of these are collected in a note in 3 Kent. Com. 421. *Allen* v. *Fransworth,* 5 Yerger, 189; *Nashville Bridge Co.* v. *Shelby,* 10 Yerger, 280 ; *Somerville* v. *Wimbish,* T. Gratt. 205 ; *Mills* v. *County Commisssoners,* 2 Scam. 53; *Young* v. *Harrison,* 14 C. Geo. 130, S. C. 9 Geo. 359. To which may be added *Miller* v. *Learns,* 3 Oregon, 215.

In this case the Act provides for compensation to the owner of the land taken by the defendant. On what principles it should be calculated, it is not our duty to inquire.

We must at present assume that full indemnity has been or can be obtained. Nor are we called on to express any opinion on the rights of the defendant, except so far as they are involved in the question of the plaintiff's right to an injunction.

PER CURIUM. Judgment below affirmed. Injunction refused, and case remanded.