THE CATAWBA TOLL-BRIDGE COMPANY v. CYRUS FLOWERS et al.

*Highways—Bridges—Ferries.*

1. No one, in the absence of special authority from the Legislature or the Board of County Commissioners, has the right to erect and maintain a bridge or ferry, within such a distance of a duly authorized toll-bridge as will divert from the latter the custom which, in the ordinary course of travel, would pass over it, whether that distance be greater or less than five miles.

2. The distance of five miles prescribed in the statute (*The Code*, § 2099) in reference to ferries, is five miles in a direct straight line from the ferry first established.

CIVIL ACTION for damages, tried at Spring Term, 1892, of CATAWBA Superior Court, *Bynum, J.*, presiding.

The plaintiff is incorporated by chapter 130 of the Acts of 1848–'9, amended by statute ratified the 22d day of December, 1873, and is authorized to construct a toll-bridge over the Catawba river as prescribed, to demand and receive not exceeding certain tolls specified from persons crossing the same on foot, on horseback, in vehicles, in wagons, carriages, etc., taken across the same. The charter of the company does not forbid the erection and use of like or other toll-bridges or public ferries over the said river, as allowed by the general statute on the subject of roads and ferries. The plaintiff is also authorized to construct a public highway to, across and from its bridge. It constructed and used its bridge as allowed by its charter, and contends that it has the right to carry persons, etc., across the said river by its bridge, to the exclusion of every other person to do the like by bridge or ferry for the distance of five miles above and below its bridge.

The plaintiff alleges that the defendants without authority, and unlawfully, have established and use a ferry across the said river within five miles of its bridge, whereby they have diverted and drawn from the latter a large part of its patronage, to its great damage, etc., and it demands judgment for the same. The defendants allege that their ferry has been in operation for more than sixty years, and for forty years before the plaintiff's bridge was built, and their right to have and maintain the same is paramount to that of the plaintiff. They also plead the statutes of limitation.

The Court submitted to the jury the following issues, to which they responded as follows:

1. Is the plaintiff the owner of the bridge as alleged in the complaint? Ans. Yes.

2. As such owner, is plaintiff entitled to the exclusive privilege or franchise of carrying persons, horses, wagons,

cattle, buggies, carriages, and the like, across the Catawba river within five miles of said bridge as alleged? Ans. No.

3. Have the defendants unlawfully established a ferry over the said Catawba river within five miles of said bridge, and do they carry persons, horses, wagons, cattle, buggies, carriages, and the like, across the said river for toll? Ans. No.

4. Has the action of defendants in establishing and operating said ferry damaged the plaintiff; if so, in what sum? Ans. Nothing.

5. Have the defendants, and those under whom they claim, operated said ferry for twenty years next before the bringing of this action? Ans. No.

Among other things the Court instructed the jury as follows:

Upon the second issue he instructed them, that while the charter authorized the plaintiff to construct and operate said bridge, it did not give them the exclusive privilege of transporting persons, etc., across the river by means of said bridge within five miles of said bridge, and that they would answer it No.

Upon the third issue, he instructed them that if Paine, Fisher, Flowers & Lyerly had operated a ferry there for more than twenty years continuously, for the purpose of carrying persons, horses, vehicles, etc., over said river, receiving pay therefor, the law presumed the grant of a franchise; and if that was the ferry that Icard was operating, then the ferry would not be unlawfully established. If there had been a break in said time of twenty years, for as long a time as two years, that the time would have to be computed from the break, and that unless the defendant showed by a preponderance of the testimony that it had been operated continuously for twenty years before the bringing of this suit, he had failed to show the franchise, and it would be unlawfully established. That if he had failed to show the fran-

chise by the twenty years use, then the order of the Com-
missioners of Caldwell County did not authorize the estab-
lishment of the ferry, but it required the same order from
the Commissioners from Catawba County, and the defendant,
not having shown that he had failed in this branch of his
defence, the establishment of the ferry would be unlawful.

Upon the second question involved in the issue, the Court
instructed the jury that the distance of the ferry from the
bridge was to be ascertained by them by following the course
of the stream, not an air-line, and not the distance by the
road on either side of the stream, and if it was within five
miles by the course of the stream, on this they would say
Yes; if more than five miles they would say No.

The plaintiff assigned error as to these instructions.   The
Court gave judgment for the defendants, and the plaintiff
appealed.

*Mr. M. L. McCorkle*, for plaintiff.
No counsel *contra*.

MERRIMON, C. J.: The power to provide for and regulate
the establishment and use of highways, public bridges and
ferries, is vested in the Legislature.   The latter, in the exer-
cise of that power, has enacted the general statute (*The Code*,
ch. 50) in respect to " roads, ferries and bridges," and many
other particular statutes, public and private, in some instances
incorporating toll-bridge, turnpike, ferry and other like com-
panies, with a view to the greater advantage of the public.
The plaintiff is such a company, and had the right by virtue
of its franchise to construct, use and derive advantage from
its bridge, as allowed by its charter and principles of law
applicable.   In consideration of such rights and privileges
granted by the Legislature, it was bound to make its bridge
such as the nature of the stream over which it was con-

structed, required ; to make it substantial, safe and convenient, and to keep it always in reasonable repair for the use of the public. If it failed in these respects in a substantial degree, it was indictable, and amenable civilly to any person who suffered injury and damage caused by such default. In consideration of these public advantages, the plaintiff had the exclusive right as against private individuals to carry persons, their carriages, wagons, live stock, and the like, going, passing and repassing ordinarily by that way, over its bridge. The defendants or other private persons had no right officiously to erect another private bridge or ferry across the river named, and thereby take from and divert the patronage that would in the ordinary course of travel, and passing to and fro, go that way, from the plaintiff's bridge; and this is so whether they took compensation or not for the use of their bridge or ferry. The plaintiff in consideration of the erection of its bridge, its duties and obligation to the public, by its charter is entitled to the benefit of such patronage. Nor is this unjust or unreasonable. The private person may have an indifferent bridge or ferry; he may keep it for a month or two or a year, and abandon it, or allow it to become ruinous and dangerous; the plaintiff is bound by its obligation to the public to keep its bridge continuously safe and in good repair; it owes the public important duties and fails to perfom them at its peril. Hence, if a private person shall so interfere with the plaintiff's rights, to its injury, it at once has a cause of action against him, and it may sue and recover such damage as it has sustained. *Long* v. *Beard*, 3 Murphy, 57 ; *Smith* v. *Harkins*, 3 Iredell Eq., 613; *Pipkin* v. *Wynns*, 2 Dev., 402; *Taylor* v. *Railroad*, 4 Jones, 277 ; *Carrow* v. *Toll-Bridge Co.*, Philips, 118 ; *Barrington* v. *Ferry Co.*, 69 N. C., 165 ; *Broadnax* v. *Baker*, 94 N. C., 675.

The plaintiff's charter does not in terms grant it exclusive privileges, nor such exclusive privileges as are above pointed

out for any particular specified distance above or below its bridge on the river; nor has it exclusive privileges that at all exclude the exercise of the power of the Legislature or the County Commissioners, in respect to the establishment of roads, ferries and bridges. The Legislature might by proper enactment authorize the construction of a bridge or ferry near to the plaintiff's bridge, and so might the County Commissioners, in the exercise of authority conferred upon them by the general statute (*The Code*, ch. 50). It may be that the County Commissioners ought not, in fairness and in good faith, to exercise such power; still it exists, and the plaintiff has notice of the same. *Smith* v. *Harkins, supra,* and *Barrington* v. *Ferry Co., supra; Toll-Bridge Co.* v. *Commissioners,* 81 N. C., 491. Such power ought not to be exercised except for substantial considerations.

The instruction of the Court to the jury complained of in respect to the second issue is erroneous. The Court should have told the jury that the plaintiff's rights were exclusive as against the defendants, unless it should appear that their ferry was in some way established or authorized by law. It appears that it was not authorized by statute or the order of the proper County Commissioners, and the jury found by their verdict that the defendants had not operated it for twenty years. They had no lawful ferry, and hence, have no right by their private ferry to interfere with and divert the plaintiff's customers from its bridge to its injury.

In the absence of any public bridge or ferry other than the plaintiff's bridge, its exclusive right to patronage as as against the defendants, was not necessarily confined to five miles above and below its bridge on the river; it was entitled to have the custom that in the ordinary course of travel and transportation would go over its bridge. The defendants would be liable to the extent they diverted the same, whether within or without five miles.

It seems that the plaintiff and the Court supposed its exclusive right as to distance was governed by the statutory regulation. *The Code*, § 2049. If this were so, we are of the opinion that the words " within five miles of any ferry on the same river or water, which theretofore may have been appointed," imply five miles in a direct straight line from the ferrry first appointed. The purpose is to locate ferries at least five miles apart. Streams in many cases are tortuous, very crooked, and the distance of five miles from one ferry by the course of the river might turn out to be a mile or two miles from it by a direct line. The language employed and the nature of the matter leave no doubt in our minds that our interpretation of the provision is a correct one.

There is error and the plaintiff is entitled to a new trial.

Error.