E. J. LILLY and others v. B. R. TAYLOR and others.

*Municipal Corporations—Repeal of Town Charter, effect of upon Creditors of the Town.*

1. Municipal corporations are instrumentalities of the state for the administration of local government, and their powers may be enlarged, abridged, or withdrawn at the pleasure of the legislature, there being no contract or vested right involved.

2. The repeal of a town charter deprives its authorities of the power to levy taxes, or to collect taxes already levied, and puts an end to process for the enforcement thereof; but moneys collected and in hand may be controlled by the courts.

3. In such case, town property, such as public buildings, &c., is under the control of the state and not subject to town debts; nor can property of the individual citizen be so subjected except through taxation authorized by the legislature.

(*Wallace* v. *Trustees,* 84 N. C., 164, cited and approved).

MOTIN to dissolve an injunction heard at Fall Term, 1882, of CUMBERLAND Superior Court, before *Gilmer, J.*

The court ordered that the injunction theretofore granted by Judge Shipp, be continued to the hearing, and the defendants appealed.

*Mr. George M. Rose,* for plaintiffs.
*Mr. R. P. Buxton,* for defendants.

SMITH, C. J.   Pursuant to several writs of *mandamus* issued from the superior court, at the instance of creditors who had recovered judgment on their several debts against the mayor and commissioners of the town of Fayetteville, who are defendants in this action, they levied certain taxes to pay the same and to meet the local expenses of the town government, and on September 29th, 1881, delivered the tax-lists containing the said levies to the defendant, Taylor, town constable and tax-collector, for collection. He was proceeding to make the moneys due thereunder until interrupted by the restraining order obtained by the plaintiffs, who are resident tax-payers in said town, charged as such in said list, and upon which the property of some of them has been seized by the collector. The mayor and commissioners resigned their respective offices previous to October 4th, 1881, to take effect on that day.

By an act passed at the session of the general assembly (Private Acts 1881, ch. 58), it is provided that in case the municipal authorities are unable to effect a compromise of the corporate indebtedness by reducing it one-half on or before September 1st, 1881, an election should be held on the first Monday of the ensuing month to take the sense of the qualified electors in the town

upon the question of a surrender of the charter, and if the response should be in the affirmative, a section (number 6), in the act and in these words should take effect: "All laws and parts of laws incorporating the town of Fayetteville and granting corporate powers to said town, are repealed."

The concluding clause in section 1 declares that the "town authorities shall pay the floating debt of said town, in full, before the provisions of this act allowing an abrogation of the charter shall be of force."

No compromise or reduction of the public debt being made, as authorized under the act, in consequence of the refusal of the creditors to accept the proffered terms, an election was held and the popular will ascertained to be in favor of the surrender of the charter and the extinction of the town as a municipal corporation, and the result was so declared and published by the sheriff of Cumberland, under whose direction the election was required to be held.

Upon the presentation of these undisputed facts, and others contained in the verified complaint of the plaintiffs, offered as an affidavit, His Honor granted a rule upon the defendants to show cause at Wadesboro, on a day fixed, why an injunction should not issue, as asked by the plaintiffs, against further proceedings in enforcement of the taxes levied, and in the meantime ordered the defendants to desist from making sale or interfering with the property levied on.

The defendants filed their answers, setting out the several writs of *mandamus*, in obedience to which the tax levies and lists were made out, and to meet also the necessities of local municipal administration, explaining some and denying other allegations in the complaint, and controverting the alleged effect of the repealing vote because of the non-payment of the floating debt, but not the facts which, in substance, we have extracted from the complaint. It is not deemed necessary to refer to the statements in the answers more in detail.

Several other plaintiffs have been associated, on their applica-

tion, with those who commenced the action and have similar interests, and three of those who are prosecuting these writs of *mandamus* have been admitted as co-defendants and adopt the answer of the defendant, Taylor.

After several postponements and upon the hearing of the plaintiffs' application and the answer to the rule, at fall term, 1882, of Cumberland superior court, the presiding judge continued the restraining order until the final hearing of the cause, and from this judgment the defendants appeal.

On the 8th day of March, 1883, during the week assigned for the hearing of appeals from the fourth judicial district, and after the first call of this cause, an act was passed, and went into operation, entitled "An act for the relief of the former town of Fayetteville, and for other purposes," the preamble whereof is in these words:

"Whereas, by virtue of chapter fifty-eight of the private laws of the general assembly of North Carolina, at the session of 1881, ratified March 12th, 1881, the charter of the town of Fayetteville, in Cumberland county, has been repealed and abrogated, leaving the creditors of said town without the means of collecting any part of their debts, and leaving the community without the necessary means of local government," &c.

The 44th section declares in more explicit terms that all laws creating any other offices for the local government of said district of Fayetteville, and all laws for the levying and collecting of taxes for the support and maintenance of any local government for said district, other than is herein prescribed, and all laws providing for the levying and collecting of taxes of any sort from the persons and property within said district, other than the state and county taxes, and the taxes by this act levied and directed to be collected, are hereby repealed and abrogated, and the offices created by said laws are hereby abolished, and it shall be unlawful for any person to exercise or attempt to exercise, the duties of any office so abolished.

The succeeding and last section but one enacts, that persons

offending against any of the provisions of this act, "shall be guilty of a misdemeanor and subject to punishment by a fine "not to exceed" the sum of $50, or "by imprisonment for 30 days."

Whatever doubt may have existed as to the consequences of the popular vote, in the absence of direct evidence of the full discharge of what is called the "floating debt," upon the continued existence of the town as a corporate body and the tenure of the offices created under its organic law, it is removed by the preamble and sections of the last act from which we have quoted, which act, emanating from the creative power, is equally efficacious as a repeal; and there is, therefore, no such town and no office to be exercised under the annulled charter. The legislature has formed, in its place, a new government denominated a tax-district, with full and minute directions for its management under persons specifically named and denominated "a board of commissioners."

The only question left open and which can now arise upon the appeal, relates to the validity of the legislation, which thus takes from the creditor all remedy for coercing the payment of his debt, under that provision of the federal constitution which prohibits a state from passing a "law impairing the obligation of contracts," Art. I, § 10, par. 1, and this inquiry is definitely met and answered by the supreme court of the United States in the decision of the controversy growing out of the repeal of the charter of the city of Memphis, and the effect upon creditors, in *Merriwether* v. *Garrett*, 102 U. S. Rep., 472.

The conclusions reached and announced after a careful and full examination by a unanimous court are:

1. Property held for public uses, such as public buildings, streets, squares, parks, promenades, wharves, landing places, fire engines, hose and hose-carriages, engine-houses, engineering instruments, and generally everything held for governmental purposes, cannot be subjected to the payment of the debts of the city. Its public character forbids such an appropriation. Upon the repeal of the charter of the city such property passed

under the immediate control of the state, the power, once delegated to the city in that behalf, having been withdrawn.

2. The private property of individuals, within the limits of the territory of the city, cannot be subjected to the payment of the debts of the city except through taxation. The doctrine of some of the states that such property can be reached directly on execution against the municipality, has not been generally accepted.

3. The power of taxation is legislative and cannot be exercised otherwise than under the authority of the legislature.

In a concurring opinion of Mr. Justice FIELD, to which Justices MILLER and BRADLEY give their approval, in explanation of the grounds of the ruling, he says:

"Municipal corporations are mere instrumentalities of the state for the more convenient administration of local government. Their powers are such as the legislature may confer, and these may be enlarged, abridged or entirely withdrawn at its pleasure. * *' There is no contract between the state and the public that the charter of a city shall not at all times be subject to legislative control. All persons who deal with such bodies are conclusively presumed to act upon knowledge of the power of the legislature. There is no such thing as a vested right held by any individual in the grant of legislative power to them."

He then proceeds to say, that while public property such as court-houses, hospitals, fire engines, hose, and such articles as the corporation held for public use, cannot be reached and applied by creditors to their debts, nor can taxes levied but not collected at the dissolution of the corporation, be pursued and appropriated, even when levied under peremptory judicial orders; and that a repeal of the law put an end to the process for its enforcement; yet that *moneys collected* and in the hands of the officers "may be controlled by the process of the courts, and applied, by their direction, to the uses for which they were levied, but until then

there is nothing in existence but a law of the state imposing certain charges upon persons or property, which *the legislature may change, postpone or release,* at any time before they are enforced."

To the same effect is our own ruling in *Wallace* v. *Trustees,* 84 N. C., 164.

In the dissenting opinion of Mr. Justice STRONG, with whom agree Justices SWANE and HARLAN upon some of the rulings, it is said of the circuit courts of the United States that " they certainly have no power to compel the levy of a tax by a corporation that is without officers and which has ceased to exist."

It is manifest, then, that the defendant, Taylor, has been stripped of his official functions, as constable and tax-collector, by the extinction of the corporation and the withdrawal of the authority conferred by its charter, to levy or to collect taxes already levied, upon any of its officers or agents.

The case would not now be one for the exercise of the preventive power of the court, as the remedy at law is ample when sought in an action for damages, but as the tax-collector was acting under color of office, and where the efficacy of what had been done towards the surrender of the charter was somewhat uncertain, the restraining order was properly within the jurisdiction of the court in exerting its equitable powers.

The cause is not before us for a final disposition upon its merits, but only upon an interlocutory restraining order or injunction, and in this we declare there is no error. This will be certified.

No error.                                            Affirmed.