S. BARKSDALE et als. v. COMMISSIONERS OF SAMPSON COUNTY.

*Constitution—Power of County Commissioners to levy Tax for Schools.*

1. While it is the duty of the county commissioners under Art. IX, §3 of the Constitution, to levy a tax sufficient to keep the common schools open for four months in each year, yet in discharging this duty they cannot disregard the limitation imposed as to the amount of the tax to be levied by Art. V, §1.

2. The act of the Legislature of 1885, ch. 174, §23, which allows the commissioners to exceed this limit is therefore unconstitutional.

BARKSDALE *v.* COMMISSIONERS SAMPSON COUNTY.

3. This act does not come within the provisions of Art. V, §6, which authorizes a "*special tax*" for a "*special purpose*," with the approval of the Legislature.

4. When the Constitution imposes a duty and provides means for its execution which prove to be inadequate, all that can be required of the officer charged with the duty is to exhaust the means thus provided.

(*Brodnax* v. *Groom,* 64 N. C., 244; *Simmons* v. *Wilson,* 66 N. C., 336; *Mauney* v. *Commissioners,* 71 N. C., 486; *Trull* v. *Commissioners,* 72 N. C., 388; *French* v. *Commissioners,* 74 N. C., 692; *Cromartie* v. *Commissioners,* 87 N. C., 134, cited and approved).

(*University* v. *Holden,* 63 N. C., 410; *Simmons* v. *Wilson,* 66 N. C., 336; *Street* v. *Commissioners,* 70 N. C., 644; *Brothers* v. *Commissioners,* 1 bid., 726; *French* v. *Commissioners,* 75 N. C., 477; *Clifton* v. *Wynne,* 80 N. C., 145; *Mills* v. *Williams,* 11 Ired., 558; *Caldwell* v. *Justices,* 4 Jones Eq., 323; *White* v. *Commissioners,* 90 N. C., 437; *McCormac* v. *Commissioners, Ibid.,* 441; *Brodnax* v. *Groom,* 64 N. C., 244; *Holcombe* v. *Commissioners,* 89 N. C., 346; *Evans* v. *Commissioners, Ibid.,* 154, cited in the dissenting opinion).

Mr. Justice MERRIMON dissents from the opinion of the Court.

CIVIL ACTION, tried upon a case agreed by *McKoy, Judge,* at October Term, 1885, of the Superior Court of SAMPSON county.

The facts sufficiently appear in the opinion. There was a judgment for the plaintiffs, and the defendants appealed.

*Messrs. Boykin & Faison* and *Battle & Mordecai,* for the plaintiffs.

*The Attorney General* and *Mr. E. C. Smith,* for the defendants.

SMITH, C. J. The General Assembly shall levy a capitation tax on every male inhabitant of the State over twenty-one, and under fifty years of age, which shall be equal on each to the tax on property valued at three hundred dollars in cash. The commissioners of the several counties may exempt from capitation tax in special cases, on account of poverty and infirmity, and the State and county capitation tax combined shall never exceed two dollars on the head. Con., Art. V, §1. Each county shall be divided into a convenient number of districts in which one or more public schools shall be maintained at least four months in every year; and if the commissioners of any county shall fail to

comply with the aforesaid requirements, they shall be liable to indictment. Art. IX, §3.

The State and county taxes, among the former of which is a tax for school purposes, imposed under the act of 1881, of twelve and a half cents on property valued at one hundred dollars, and thirty-seven and a half cents on the poll, which taxes in the county of Sampson come up to the full measure of the limits fixed in the Constitution, as interpreted in numerous adjudications. There is also a special tax of small amount in excess, levied with the special approval of the General Assembly, under Art. V, §6, whose legality is not drawn in question.

It is found to be impracticable to carry out the mandate to keep up the public schools in the county for four months of the year, without laying an additional tax of thirteen and one-third cents on the property, and forty cents on the poll, and accordingly the commissioners have made this further assessment, as they are expressly required to do by the amendatory act in regard to public schools, passed at the session in 1885, ch. 174, §23. The section is in these words:

"If the tax levied by the State for the support of the public schools shall be insufficient to maintain one or more schools in each school district, for the period of four months, then the board of commissioners of each county shall levy annually a special tax to supply the deficiency for the support and maintenance of said schools, for the said period of four months or more. * * * The said tax shall be levied on all property, credits and polls of the county, and in the assessment of the amount on each, the commissioners shall observe the constitutional equation of taxation; and the fund thus raised shall be expended in the county in which it is collected, in such manner as the county board of education may determine, for maintaining the public schools for four months at least in each year."

In executing this legislative mandate to raise by assessment the additional sum required to maintain the public schools for the prescribed period under the constitutional provision which has been recited, the aggregate amount of the taxes levied is eighty-

eight and one-third cents on the one hundred dollars worth of property, and two dollars and sixty-five cents on the poll. Inasmuch as these provisions of the Constitution are in conflict in their application to the facts in the present case, the one commanding under a penalty to be done, that which the other withholds the means of doing, the question is presented, if they cannot, upon any reasonable construction, be reconciled, which shall prevail, and which must yield. The Court below ruled that the tax levied under the act of 1885, overstepping the limits of the taxing power conferred, although necessary to a compliance with the directions as to the schools, is not warranted by the Constitution, and cannot legally be enforced. The correctness of this ruling is before us on the appeal.

While reluctant to declare a legislative act unconstitutional, and the Court will only so adjudge in a plain case, admitting of little or no doubt, yet a most imperative obligation rests upon them to uphold the fundamental law, when they are in irreconcilable conflict, and to declare the former inoperative and void.

It is an incontrovertible proposition, that when in the same instrument, a restricted authority is conferred, and an act to be done under it, to which that authority is inadequate, it is only necessary to do what can be done within the prescribed limits. The duty then, of keeping up the public schools devolved upon the commissioners, is performed when all the resources open to them are employed and exhausted in the effort to maintain them for the designated period. Within the limits of the power to tax, given the commissioners, the schools must be kept up, and the mandate is arrested when those limits are reached. Action beyond is not only not required, but is void if attempted. The levy finds no support in §6 of article V, for this is not one for a "*special purpose* and with the *special* approval of the General Assembly" for county purposes. The enactment is in general applicable to the whole State, and part of the general State legislation in furnishing facilities for the education of its people. It cannot find shelter under any of the numerous adjudications

sustaining the power to tax, beyond the asssigned restraints and in disregard of the established ratio between State and county taxation, which will be found at the foot of the section.

This form of taxation is local as well as special, and such has been the legislative interpretation of this clause in the frequent cases in which a special approval has been asked and obtained. *Brodnax* v. *Groom*, 64 N. C., 244; *Simmons* v. *Wilson*, 66 N. C., 336; *Mauney* v. *Commissioners*, 71 N. C., 486; *Trull* v. *Commissioners*, 72 N. C., 388; *French* v. *Commissioners*, 74 N. C., 692; *Cromartie* v. *Commissioners*, 87 N. C., 134.

These cases settle the extent of the taxing power, when exercised by the county authorities, and allow its restraints only to be disregarded, when the tax is needed to meet obligations existing before the adoption of the Constitution, by virtue of the Constitution of the United States, and decide that the limitations do not apply to other municipal corporations erected by law.

Our decision rests upon the interpretation heretofore repeatedly given to the clause that directs the imposition of a poll tax equal to that imposed upon property valued for taxation at three hundred dollars, by which the taxes are both thus associated, and arrested, when, on the poll, they reach the maximum of two dollars. If the construction of the constitutional provision were an open question, we might pause to thus limit the taxing power upon property, a restraint found, as Mr. Justice RODMAN says in his separate opinion at the end of volume 66 of the Reports, page 659, exists in no other State, and which has so crippled the action of the General Assembly in its course of legislation for the public good, and disables it, for want of means, to do many things which the Constitution requires, such as providing for the interest on the State debt, and a sinking fund to discharge the principal, to do which it has been necessary to break through the restraints to discharge an obligation to creditors, and not impair the contracts from which they spring.

There was a propriety in fixing a limit to the poll tax, because the fund raised from this source is appropriated exclusively to

two objects, the support of the poor, and the providing the means of free education; but it was impracticable to foresee the needs of the State for moneys for its future management. And it is to be observed that the equation is only to determine the measure of the personal or poll tax, so long as it can be levied for the special objects mentioned, and up to its fixed limits.

This mode of interpretation would have avoided all the difficulties growing out of the want of power to tax, and escaped the present conflict. But we are bound by continuous adjudications to which legislation has been adjusted, and we are not free to unsettle them. But as the repugnance of the provisions under consideration is manifest, the commissioners must refrain from assessment, however necessary for schools, which pass the bounds of conferred power.

We therefore sustain the ruling of the Court below.

No error.                                    Affirmed.


MERRIMON, J., (dissenting). The constitutional question presented by this appeal, is one of great importance, and as I do not concur in the opinion of my brethren nor in the judgment of the Court, I deem it proper to state the grounds of my dissent.

The plaintiffs in their complaint, allege in substance, that the defendant commissioners, in conjunction with the justices of the peace of Sampson county, have levied, and the defendant sheriff is about to collect, a tax of $13\frac{1}{3}$ cents on the $100 valuation of property, and 40 cents on the poll, for the further support of public schools in that county, as allowed by the statute, (Acts 1885, ch. 174, §23); that this tax levy is in excess of $66\frac{2}{3}$ cents on the $100 valuation of property and $2.00 on the poll, and is therefore, as they insist, not allowed, but is in effect forbidden by Art. V, §1, of the Constitution. The defendants admit the facts as alleged, but insist that the statute just cited, is not within any inhibition of the Constitution; that it is not in conflict

with, but on the contrary, is warranted by the Constitution, and is in all respects valid and operative.

1. It is not contended that there is any provision of the Constitution that forbids or contravenes the statute cited above, except Art. V, §1 thereof, which provides as follows: "The General Assembly shall levy a capitation tax on every male inhabitant of the State over twenty-one and under fifty years of age, which shall be equal on each, to the tax on property valued at three hundred dollars in cash. The commissioners of the several counties may exempt from capitation tax in special cases, on account of poverty and infirmity, and the State and county capitation tax combined shall never exceed two dollars on the head."

This Court has construed this section in many cases, beginning with that of *University* v. *Holden*, 63 N. C., 410, and has uniformly held that it establishes an equation between capitation and property tax—that the capitation tax as to the persons subject to it, "*shall* be *equal* on each to the tax on property valued at three hundred dollars in cash," and that the "State and county capitation tax shall never exceed two dollars on the head." That is to say, the capitation tax on each individual subject to it, *must be equal* to the tax on property valued at three hundred dollars in cash, and as the capitation tax cannot exceed two dollars on the head, therefore the tax levied on property of the cash value of three hundred dollars, can never exceed two dollars. So that generally, not always, as will appear presently, the power of the Legislature is so *limited*, that it cannot ordinarily levy a tax greater on the poll than two dollars, and on property of three hundred dollars' value, than two dollars, and in that proportion, but it may levy a less tax, observing the established ratio.

But, while this limitation upon the power of the Legislature prevails generally, it is very clear that it does not always. There are numerous specified and well defined purposes of the Constitution, and perhaps others not yet well understood and defined, that do and may require the expenditure of sums of money great or small, which the Legislature may raise by taxation, untram-

meled by such limitation, if the tax levy within its scope shall be inadequate to supply money for those purposes. Some of these were pointed out in *University* v. *Holden, supra,* and among them, those to raise money to pay the principal and interest of the public debt; to supply a casual deficit in the treasury; to suppress insurrection or repel invasion, and to raise money for special county purposes with the approval of the General Assembly. There is no restriction upon the power of the Legislature to levy taxes for these purposes, and for the same reason, as I believe, for the purpose of the support of public schools, as I will presently endeavor to show. The case just cited is a leading one. It was argued at great length and with distinguished ability, and all the Judges delivered opinions in it. In respect to the exceptions to the limitation upon the general power of taxation in the Legislature, the late Chief Justice PEARSON said: "I agree that if under the equation, carried to its limits, the amount is not enough to meet current expenses and also to pay the interest on the public debt, then for the excess needed, it is not only within the power, but it is the duty of the General Assembly to disregard the equation; for this protection to property must be taken to be subject to the injunction to maintain the honor and good faith of the State untarnished in regard to the public debt, (Art. I, §6), and by §4 of the Article under consideration it is ordained: "The General Assembly shall *by appropriate legislation* and *adequate taxation* provide for the payment of the interest on the public debt, and after 1880 it shall lay a special tax, as a sinking fund to discharge the principal." He further conceded, that to supply money to meet a casual deficit, and suppress insurrection or invasion, the equation might be disregarded.

Justice READE said in reference to the equation and limitation, that the tax it would allow to be raised "was thought to be sufficient for the ordinary and economical administration of the government. * * * * It ought not to be supposed that a constitution would be framed with such limitations upon the taxing power, as that the vessel of State will sail safely "in

fair weather, to be wrecked in the first storm.    We may well im-
pute it to wisdom to provide that ordinarily, there shall be light
taxes and economy in expenditures, but when any extraordinary
necessity arises, the whole power of the State must be unloosed
to meet it.    It is admitted, that the counties, for special purposes,
and with the approval of the Legislature, may under §7, levy a
tax without limit and without a vote of the people."

Justice RODMAN said: "This proportion and this limit apply
equally to all State taxes whatever, but not with equal force.    As
to some, it is absolutely imperative, and a tax laid contrary to its
provisions would be void.    As to others, from the nature of the
objects of the tax, and from the provisions of the Constitution,
it seems to me to be merely directory; that is to say, addressed
to the discretion of the Legislature, and to be regarded, if possi-
ble, consistently with the attainment of the great objects of the
Constitution, but if these cannot be attained within the limits
and proportions prescribed, then to be disregarded.    And of this
possibility, the Legislature must necessarily be the exclusive
judge."    He then proceeds to enumerate several exceptions, as to
which the limitation mentioned would not apply.

Justice DICK said: "We must suppose that the framers of our
government did not intend by these restrictions to limit the Leg-
islature in such a manner as to prevent it from sustaining the
honor and credit of the State, providing for the exigencies of the
government and advancing the best interests of the people. * * *
The object of the Convention in Art. V, §1, was to provide a sys-
tem of general taxation for the ordinary expenses of the govern-
ment.    *    *    *    *    The restriction cannot, under any circum-
stances, extend to a debt incurred for a casual deficit, or for sup-
pressing insurrection or invasion."

Justice SETTLE said: "It is apparent that this construction
would effectually destroy the most cherished objects of the Con-
stitution.    It would *virtually repudiate* the old debt, notwith-
standing the Declaration of Rights, &c.    *    *    *    The consti-
tution, Art. IX, §2, requires the General Assembly to 'provide

by taxation and otherwise, for a general and universal system of public schools, &c. * * * This provision of the Constitution, involving as it does the honor and prosperity of the State, must become a dead letter," &c. He points out distinctly, that the equation and limitation apply only to the power of the Legislature to levy taxes for the ordinary expenses of the government, and in this all the Judges seem to have agreed.

The views thus expressed by the several Judges composing a Court, confessedly, of great ability, the decisions of the Court in that case, and in many similar cases, were not founded upon any express provision of the Constitution excepting the subjects mentioned from the limitation upon the power of the Legislature to levy taxes generally—there were no such provisions—but upon the broad ground that the Constitution required in terms, or by necessary and reasonable implication, that certain things specified should—must—be done, at all events, and they could not be done within the limitation upon the taxing power and if the same should be observed. The Court viewed the Constitution as a whole—its terms and phraseology—its general and special provisions—its purposes and the ends to be accomplished by it, some of these necessarily and at all events—others in the discretion of the constituted authorities, including the Legislature; and as to the subject immediately before the Court, it so construed the sections affecting it, as to render them and the whole Constitution operative and effectual. There were inconsistent and contradictory provisions to be interpreted and reconciled. In doing this, the Court held, and was obliged to hold, that the limitation of the taxing power of the Legislature, applied to taxes levied for the ordinary and current expenditures of the State, and not to such special purposes as the Constitution designated specially, and required to be accomplished at all events, unless this could be done within the scope of the limitation. Thus, Art. V, §1, established the equation and limitation in respect to taxation. The Constitution required, in

31

strong and mandatory terms, that the public debt and the inter-est on it should be paid, and the public faith and honor main-tained, but made no special provisions for raising money to pay the same, and it was insisted that this could not be done if the limitation on the power of taxation should be observed. The Court held, that in such case, the limitation did not apply, be-cause, as the Constitution, in effect, specifically required this to be done at all events, by necessary implication—implication as strong as if the Constitution provided so in terms—power was conferred on the Legislature to levy taxes adequate for the pur-pose, without regard to the limitation.

This section affected, vitally, all the leading purposes of the Constitution, and it was the plain duty of the Court, to give it such construction as would effectuate all its provisions, and cer-tainly those specially designated. The Court was forced to adopt this interpretation, else the Constitution might—would—in some most material respects, be wholly inoperative and essentially ab-surd! This interpretation has been uniformly recognized by this Court in many cases, and the legislative and executive branches of the government seem to have accepted and acted upon it as correct and conclusive. *Simmons* v. *Wilson,* 66 N. C., 336; *Street* v. *Commissioners,* 70 N. C., 644; *Brothers* v. *Commission-ers, Ibid.,* 726; *French* v. *Commissioners,* 75 N. C., 477; *Clifton* v. *Wynne,* 80 N. C., 145.

Now, accepting these decisions, and many others like them, and the grounds upon which they rest as correct, it seems to me —I cannot doubt—that the power of the Legislature to levy taxes adequate for the support of the public schools for four months in every year, is unaffected by the limitation upon the general power of taxation. It may, if need be, go beyond it, and to such extent as may be necessary. If this is not true, then, as this case makes plain, the Constitution, in one of its leading and most important purposes, is partially, and may be-come altogether, inoperative. This ought not to be allowed if it can be avoided. All rules of construction forbid it.

The Constitution, Art. IX, provides, in §§1, 2 and 3 thereof, as follows:

"SEC. 1. Religion, morality and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged.

"SEC. 2. The General Assembly at its first session under this Constitution, shall provide by *taxation* and otherwise, for a general and uniform system of public schools, wherein tuition shall be free of charge to all the children of the State, between the ages of six and twenty-one years. And the children of the white race, and the children of the colored race, shall be taught in separate public schools; but there shall be no discrimination in favor of, or to the prejudice of either race.

"SEC. 3. Each county of the State shall be divided into a convenient number of districts, in which one or more public schools shall be maintained, at least four months in every year; and if the commissioners of any county shall fail to comply with the aforesaid requirements of this section, they shall be liable to indictment."

It appears from these sections, and, indeed, in a stronger light, from the whole of the article last cited, that the Constitution treats the subject of education as of the highest and most essential importance, and as lying at the foundation of good government and the happiness of the people. It requires in plain, strong and mandatory terms, that the Legislature "*shall provide by taxation* and otherwise, for a general system of public schools," and that "such schools shall be maintained at least four months in every year, and if the commissioners of any county shall fail to comply with the aforesaid requirements of this section, they shall be liable to indictment." This important purpose being thus treated as fundamental and essential, and being so specially provided for, the intention that it should and must be executed at all events, as prescribed, could scarcely be expressed in plainer or more commanding terms. No provision of the Constitution is clearer, more direct and absolute. Its framers, whatever else may be said of their work, seem to have been specially anxious to estab-

lish and secure, beyond peradventure, a system of free popular education. They declared it was essential to wholesome government and human happiness, thus indicating its transcendant importance. Hence, the purpose was made special, and specially provided for—it was treated as important and essential, and the Legislature, was, as it seems to me, required in imperative terms, and, at all events, to execute it by *taxation*, as well as by other means, and to emphasize and enforce the command, it was made indictable to fail to maintain such school for four months in each year. How was this to be done? How could it be done without money? And how was the money for this great purpose to be raised? Is it not manifest that it was contemplated that money sufficient for it, should be raised by adequate taxation, and, if need be, without regard to the limitation upon the general taxing power of the Legislature, just as in the case of raising money to pay the public debt, supply a casual deficit in the treasury, or to suppress insurrection or repel invasion? The provisions of the Constitution in the last mentioned respects, are not stronger or more imperative than those in respect to public schools—indeed, generally, they are much less mandatory, and appear only by reasonable implication.

In view of the authorities cited, and what I have said, I cannot think that the Constitution contemplates, that if the Legislature should exhaust its power to levy taxes for the ordinary support of the State government, without providing for the public schools at all, the schools should be discontinued altogether. I cannot escape the strong conviction, that they "*shall* be maintained at least four months in each year," at all events, and that the Legislature has unrestricted power to raise money for that purpose by taxation.

2. But, in my judgment, if need be, the tax levy in question may be upheld in another view of it. The several counties of the State are political agencies, intended to effectuate the political organization and the civil administration of the State government. The Legislature has power, subject to the Constitution, to create and establish them—it can enlarge, abridge, or

modify their powers, and it can prescribe by statute what shall be their purposes, ordinary, special, and otherwise, and thus incidentally and necessarily determine what shall be their " necessary expenses." The necessary expenses of a county must be such as are incident to the execution of the purposes for which it is created, and with which it is charged from time to time by the Legislature. *Mills* v. *Williams,* 11 Ired., 558 ; *Caldwell* v. *Justices,* 4 Jones' Eq., 323 ; *White* v. *Commissioners,* 90 N. C., 437, and authorities there cited ; *McCormac* v. *Commissioners, Ibid.,* 441 ; Cooley on Const. Lim., 488.

To build and keep in repair court-houses, public jails, poor houses, roads and bridges, and other like things, to pay jurors and other court expenses, constitute part of the necessary expenses of counties, because the Legislature has so provided. It might provide that such things should be done, and such expenses paid otherwise. Counties must serve such purposes as the Legislature, subject to the Constitution, requires ; it prescribes and establishes their powers and functions, and their expenses incurred in these respects are " necessary expenses," unless otherwise provided.

It is exclusively the province of the Legislature to establish a " uniform system of public schools," and to provide how it shall be maintained, except as specially provided in Art. IX of the Constitution. There is no provision that hinders it from providing that a general State tax shall be levied for school purposes, and that the school fund thus raised shall be supplemented by a fund for the like purpose to be raised in each county, under the uniform school system established. If it should do so, to raise such fund would become a part of the " necessary expenses " of each county, as much so as the expenses of constructing and keeping in repair public roads, bridges and the like. All these things, including public schools, are alike incident to the government of the State, it is an essential part of its duty to provide for them, and it is the office of the Legislature to prescribe and establish the agencies and instrumentalities by and through which such provision shall be administered,

unless in some particulars, wherein special provision is made by the Constitution itself, not necessary to be adverted to here. Indeed, the Constitution contemplates that the several counties and county authorities, shall have much to do in the administration of the public school system. Art. VIII, §2; Art. IX, §§3—5.

It might be unwise and inconvenient to require the several counties to provide for the support in part of their respective public schools, but the Legislature has power to so provide, and must be the judge of its exercise. Its members are responsible to the people for the just and prudent exercise of its powers, as well in this as in other respects. In this view, if it should be said the Legislature might evade—has undertaken to evade— the limitation upon its general powers of taxation, such suggestion would have no force, because, in so doing it would exercise its legitimate powers in respect to counties.

It has practically provided by the statute in question (Acts 1885, ch. 174, §23), that the several counties, each for itself, shall, if need be, supplement the general school fund supplied by the State. The material part of this section provides as follows: "If the tax levied by the State for the support of the public schools shall be insufficient to maintain one or more schools in each school district for the period of four months, then the board of commissioners of each county, shall levy annually a special tax to supply the deficiency, for the support and maintenance of said school for said period of four months or more * * * and the fund thus raised shall be expended in the county in which it is collected, in such manner as the county board of education may determine, for the maintaining of the public schools for four months at least in each year." It is thus made a part of the purpose of each county, and a county burden, to supply for itself, if need be, annually, a school fund for a specially designated purpose. I can see no reason why the Legislature may not in the exercise of its almost unlimited power over counties, create this county purpose, and impose such burden, just as it may require the several counties to construct and keep in repair court-houses,

roads, bridges and the like things. The legislative power in the one case is as broad and plenary as in the other. I know not where any distinction in this respect is to be found.

If the Legislature may impose such burden, then it becomes a part of the "necessary expenses" of each county, and such tax as that in question is not forbidden by the constitution, Art. VIII, §7, which prohibits a county tax to be levied "except for necessary expenses thereof, unless by a vote of the majority of the qualified voters therein." Nor is this affected adversely by Art. V, §6, which provides that "the taxes levied by the commissioners of the several counties for county purposes, shall be levied in like manner with the State taxes, and shall never exceed the double of the State tax, except for a special purpose, and then with the special approval of the General Assembly," because such tax is "for a special purpose," and by the statute itself, the "special approval of the General Assembly" is given to it. *Brodnax* v. *Groom,* 64 N. C., 244; *Holcombe* v. *Commissioners,* 89 N. C., 346; *Evans* v. *Commissioners, Ibid.,* 154.

The mere fact that the section of the statute authorizing the tax in question, is part of an "act to amend the public school law, chapter fifteen of The Code," cannot change or affect its purpose or legal effect; manifestly the Legislature might in such a statute impose burdens upon the several counties for county purposes. It may be added, that the substance of the section in question has been a part of the statute law of the State since 1881, (Acts 1881, chap. 200, §62; The Code, §2590). The statute was not enacted hurriedly or incautiously. On the contrary, it has had the express sanction of the Legislature at different times.

I am strongly impressed with the belief, that the views I have expressed, are at least substantially correct, and that the statute authorizing the tax in question is valid. It seems to me, that in any possible view of it, there is at least such grave doubt, as that the Court should not declare it void. The strong presumption is in favor of its validity. And in view of the construction repeatedly placed upon the provisions of the Constitution in question by this Court, as above pointed out, the legislative judgment

should have unusual weight. It is obviously based upon the ground, that the legislative power to levy taxes for the support of the public schools, like that to raise money to pay the public debt and to meet other specified purposes, is unaffected by the limitation upon the power to levy taxes for ordinary purposes. The purpose was to give effect to the Constitution, in the light of judical interpretation. In my judgment the tax complained of is valid and the order granting the injunction should be reversed.