BOARD OF EDUCATION OF BLADEN COUNTY v. COMMISSIONERS OF BLADEN.

*Taxes—Capitation Tax—Public School Tax—Pension Tax, Constitutionality of—Apportionment.*

1. It is the exclusive right of the Legislature to determine and declare by whom and how the indigent of the State entitled to support shall be ascertained, and from what fund and by whom allowances for their support shall be made.

2. The act of the Legislature (chapter 198, Acts of 1889) providing pensions for disabled and necessitous Confederate soldiers and their indigent widows was enacted in the discharge of a legal as well as moral obligation enjoined by the Constitution.

3. As the levy of the tax of nine cents made by the Act of 1889 did not exceed one-fourth of the total State levy on the poll, the Legislature had the right to appropriate it to the particular class of the indigent of the State to which it related (disabled and indigent Confederate soldiers and their indigent widows), and to provide by other legislation for the other poor through the County Commissioners of the various counties.

4. Such levy of nine cents for pensions is authorized only as a tax for the maintenance of the poor, and cannot be imposed as an additional tax, but is a part of, and must be deducted from, the one-fourth of the capitation tax usually subject to appropriation for the support of the poor, three-fourths of the capitation tax being set apart by the Constitution for public school purposes.

5. Where a County Board of Education brought suit against the Board of Commissioners to recover the portion of the capitation tax paid over to the State for several years for the pension fund to the diminution of the educational fund instead of the general poor fund: *Held*, that while the educational fund should not have been diminished by such misappropriation, the County Commissioners cannot be held liable for the same, either individually or as representatives of the county; nor, indeed, can the County Treasurer who has paid such portion over to the State be held liable, as was held in the somewhat analogous case of *Liles* v. *Rogers*, at this term.

His Honor *Winston, J.*, before when the case was heard at Fall Term, 1892, of BLADEN Superior Court, rendered an

elaborate and well considered opinion, and in conclusion adjudged as follows:

"That the Commissioners of Bladen did not legally divide and appropriate the poll-tax for the years mentioned. Under the Revenue Act of 1891, chapter 323 of Laws of 1891, forty-five cents of the poll-tax is set apart for the purposes of education irrespective of the constitutional application, but not in antagonism to the same. This amount deducted from the tax levied on each poll in Bladen County will leave $1.35 to be divided between the poor and the schools in the proportion of three to one. Hence, we have for education

Under the Revenue Act of 1891 _____ $ 45
Under the Constitution, $\frac{3}{4}$ of the balance of the capita-
    tion tax, $\frac{3}{4}$ of $1.35 _____ _____ 1 01¼

        Total___ ____ _____ _____ _____ _____ $1 46¼

The judgment of the Court, therefore, is that the plaintiffs do recover of the defendants the sum of 20¼ cents on each poll on which a poll-tax was levied and collected," etc.

The application for a mandamus was continued and the cause retained, and defendants appealed.

The constitutionality of the Pension Act of 1889, chapter 198, is involved in the determination of this case.

The plaintiffs alleged:

1. That the plaintiffs are a corporation created by the General Laws of North Carolina, with power to sue and be sued.

2. That the defendants are a corporation created by the laws of North Carolina, with power to sue and be sued.

3. That the defendants did not require enough of the poll-taxes which were levied to be appropriated and applied to the school fund of Bladen County for the years 1890, 1891 and 1892, the total levies on each poll for all purposes being $1.80, and of that amount only the sum of $1.26 was appro-

priated and applied to the said school fund, which amount so applied was less than three-fourths of the amount levied.

4. That out of the amounts levied upon polls and realized from that source, there was about five hundred and forty dollars applied to purposes other than the school fund in the county for the years aforesaid, which amount ought to have been applied by the defendants to the school fund of Bladen County.

Wherefore, the plaintiffs demand judgment—

1. For the sum of five hundred and forty dollars, and cost of this action.

2. That a writ of mandamus issue from this Honorable Court, commanding the defendants to apply the aforesaid sum already levied to the school fund of Bladen County in accordance with law and the prayer of the plaintiffs.

3. For such other relief as the plaintiffs have right to demand.

The defendants, answering the complaint, said—

"1. That the allegations contained in Articles Nos. 1 and 2 are admitted.

"2. That Article 3 of the complaint is admitted, except that portion that alleges the defendants did not levy up to the constitutional limit in the year 1890, and that part of said complaint is denied. In further answer to said Article No. 3, the defendants allege that under the Constitution, Art. V. § 2, the defendants had the right to apply twenty-five *per centum* of the capitation tax to the support of the poor of the county.

"3. That the allegations contained in Article No. 4 are denied."

The following are the facts agreed:

That the total levy on polls in Bladen County for the years 1890, 1891 and 1892 was one dollar and eighty cents on each poll. This includes the State and county levies. That said poll-taxes were apportioned as follows for each of said years, viz.:

One-fourth of total levy for poor _____$ .45
For pensions, under chapter 189, Laws of 1889_____  .09
Schools _____ 1.26

     Total _____$1.80

*Messrs. C. C. Lyon* and *Busbee & Busbee,* for appellants.
No counsel, *contra.*

AVERY, J.: Under the provisions of section 2, chapter 323, Laws of 1891, a capitation tax of seventy-five cents was levied on every male person not exempt as therein declared, to be devoted to the purposes of education and the support of the poor, as may be prescribed by law, not inconsistent with the apportionment established by section 2, Article V of the Constitution of the State. This levy was made, as expressly stated, in contemplation of the statute (section 17, chapter 198, Laws of 1889), which devotes nine cents of the proceeds arising from the tax on each poll, together with three cents of the twenty-five derived from the tax on every hundred dollars in value of taxable property, to the payment of pensions of indigent and disabled soldiers, provided for in the same act. The county of Bladen supplemented the State capitation tax so as to make the aggregate $1.80 on every taxable poll, of which nine cents on each head was paid over to the proper authorities of the State. Of the sum remaining to be appropriated under the orders of the defendants $1.26 arising from each poll was paid over to the plaintiffs, and forty-five cents per capita to the support of the poor. The plaintiffs contend that three-fourths of the aggregate capitation tax, or $1.35 of the $1.80 derived from each poll, was devoted by the Constitution to "the purposes of education," and should have been paid over to them, while the defendants insist that one-fourth of the whole levy on polls, or forty-five cents of each poll-tax, was properly expended for the support of the indigent in the county of Bladen.

BOARD OF EDUCATION *v.* COMMISSIONERS.

The questions raised by the appeal depend upon the construction of section 2, Art. V, of the Constitution, which is as follows: " The proceeds of the State and county capitation tax shall be applied to the purposes of education and the support of the poor, but in no one year shall more than twenty-five per cent. thereof be appropriated to the latter purpose."

The application of the proportion of the capitation tax specified in the Constitution to the support of the poor must be made necessarily under the direction of the Legislature, whose exclusive right it is, in the exercise of the general police power, to determine and declare by whom and how the names of the indigent of the State who are entitled to assistance from the public, in order to their maintenance, shall be ·ascertained and, subject to the restrictions of the Constitution, from what fund and by whom allowances for their support shall be made. Counties are the creatures of the law-making department, and their powers may be enlarged, abridged or withdrawn at the pleasure of the Legislature, provided no right guaranteed by the organic law be infringed. *Lilly* v. *Taylor*, 88 N. C., 489; *Commissioners* v. *Commissioners*, 95 N. C., 189. If the Legislature were not clothed with power to alter, amend or repeal section 2, Article VII, the general supervision of the poor of the county would still be exercised only as may be prescribed by law. Another clause of the Constitution (section 7, Article XI) enjoins upon the Legislature the duty of making beneficent provision for the poor, the unfortunate, and orphans. The law which provides pensions for different classes of persons who were disabled during the war, and for certain widows (Laws 1889, ch. 198), was enacted, therefore, in the discharge of a legal as well as a moral obligation. As the unfortunate, blind, deaf and dumb, and insane are cared for in different institutions adapted in all their appointments to the wants of each class, so provision is made for the wounded and disabled soldiers,

by aiding in furnishing a home, food, clothing and medical attention to some, and by giving pecuniary aid to others who are in charge of their relatives.    The act under which nine cents of the whole levy of seventy-five cents on each poll is devoted, with three cents of the levy on every $100 in value on property, to the payment of these yearly stipends, shows by its terms an intent to provide only for old soldiers who are poor as well as disabled, and for no widows, except such as are indigent and unmarried.    No person can become a beneficiary under the statute who owns or has disposed of by gift to wife, child, children or next of kin, or to any other person since May 11, 1885, property worth more than $500. Section 2.    The whole number of poor pensioners is divided into four classes, with a view to increasing the allowance according to the extent of the disability resulting from wounds.    The Legislature clearly has the power to delegate authority to the county officials to provide and care for one class of the indigent or unfortunate inhabitants of the State, and to disburse a part of the fund devoted by the Constitution to the support of the poor, by appropriating it more directly to another class, whose wants, in the opinion of the lawmakers, can be best supplied through public agencies of a different kind.

As the levy of nine cents did not exceed one-fourth of the total State levy on the poll, the General Assembly unquestionably had the right to appropriate it to this particular class of the indigent, and to provide by general or special legislation for the other poor through the County Commissioners of the various counties.    In other words, a sum not exceeding one-fourth of the amount levied by the State upon the poll could, without violating the Constitution, be appropriated with a corresponding amount, upon the equation plan of the tax derived from property, to the support of indigent soldiers and poor widows of soldiers.    But if there is no warrant in the organic law for the appropriation, except the

authority given by section 2, Art. V of the Constitution, to expend twenty-five per centum of the sum derived from the capitation tax for the support of the poor, it would follow that the amount of this fund applicable to the maintenance of other classes of indigent persons would be correspondingly diminished.   The language of the Constitution is plain and peremptory, and forbids the application of the fund arising from the tax on polls to any purposes other than to education and the support of the poor, or of any greater proportion for the maintenance of the poor than that prescribed in the instrument, until the levy reaches the limit of two dollars. So far, this Court, in construing the Constitution, has given its affirmative sanction to a levy on the poll in excess of the limit of two dollars made directly by legislative act only where the tax is intended to suppress insurrection or repel invasion, or to meet payments due on the public debt of the State, or a debt created before the adoption of the Constitution of 1868, while it has declared unconstitutional a levy by a county, even in pursuance of legislative authority, except for the payment of an ante-Constitution debt, or by virtue of specific authority under section 6, Art. V to levy a special tax.   *Board of Education* v. *Commissioners*, 111 N. C., 578; *Barksdale* v. *Commissioners*, 93 N. C., 472; *University* v *Holden*. 63 N. C., 410.   It is still an open question, however, whether the Legislature has the power to exceed the usual limit in order to provide for the maintenance of public schools as required by Art. IX, section 3 of the Constitution.   *Board of Education* v. *Commissioners, supra.*

We are of the opinion, therefore, that the Legislature had no authority to impose a tax of nine cents on each poll, except as a levy for the maintenance of the poor, under Art. V, section 2, but that no constitutional inhibition prohibited the appropriation of one-fourth of any State tax levied upon each head to the support of the poor of any or all classes. As the organic law, in unmistakable terms, devotes three-

fourths of such levy to educational purposes, it follows that whatever portion of the capitation levy (not to exceed one-fourth) is directly appropriated by the Legislature to any given class of the poor, to be disbursed by some agency other than the various Boards of County Commissioners, must be deducted by the county authorities (if less than one-fourth) from the twenty-five per centum of the capitation tax usually subject to appropriation by them for the support of the indigent, while three-fourths of the entire sum derived from that source must at all events be paid over to the Educational Board, who are constituted the custodians and disbursers of the school fund of the county.

We concur with the learned Judge who tried the case below, in the opinion that the Legislature was warranted in making the levy of nine cents on the poll, only upon the idea that necessitous veterans constituted a portion of the poor within the contemplation of section 2, Art. V. of the Constitution. But we think, in the absence of any express statute providing otherwise, the county authorities may ascertain the amount of the capitation tax that is subject to appropriation for the poor of the county by deducting the amount of the State levy for indigent soldiers from the one-fourth of the aggregate levy for State and county purposes, as they may then determine what proportion of the same fund is left to be devoted to educational purposes in the county by deducting from the three-fourths of the aggregate levy the amount devoted by the Legislature to the State School Fund, and paid over to the State Treasurer. If it were a practical question, this would lead to some modification of the calculation adopted as a basis of the judgment rendered in the Court below. But while there are urgent reasons for passing upon the question raised in this cause, especially as a guide to the Auditor, who would otherwise be at a loss in giving the instructions which he is required to send out to the counties, the judgment of the Court from which the defendants

appeal, if treated as a final judgment, upon the idea that it leaves only a computation like that as to costs to be made, is nevertheless clearly erroneous. Judgment was demanded against the County Commissioners of Bladen County for the sum of $540, the alleged amount of the tax for the years 1890, 1891 and 1892, which ought to have been applied for the maintenance of the public schools of the county, but which was applied to other purposes. It seems to us that there are several insurmountable objections to the rendition of such a judgment, or of a judgment that the plaintiffs recover a sum to be ascertained by a calculation on the basis of a given rate on each taxable poll of the county.

If the repeal of chapter 199 of the Laws of 1889 by chapter 166 of the Laws of 1893 restored the Acts of 1885 and the provisions of *The Code* in reference to education, which are not inconsistent with the last named act, or if this proceeding be governed in any respect by the Act of 1889, in any view of the question, it was the duty of the County Treasurer, as treasurer of the County Board of Education, to collect from the Sheriff "the whole amount levied (less such sum as may be allowed on account of insolvents for the current year) by both State and county for school purposes (*The Code*, § 2563), and to receive and disburse all public school funds." True, § 2563 of *The Code* was so amended by the Act of 1889, ch. 199, § 28, as to provide that suit should be instituted "on relation" of the Board of Education of the county instead of "on relation" of the County Commissioners; but we fail to find any statute or any principle of law under which an action would lie against the County Commissioners, either as individuals or as a corporation, for money belonging to the school fund which was paid over by the Treasurer on his general account as Treasurer of the county for the support of the poor of the county. If they had, in good faith, mistaken the law and ordered an improper division of the capitation tax between the county and the Educational Board, it is familiar learn-

ing that they would not thereby have incurred personal liability to the other Board, because they would have been acting in a judicial capacity. *Thomas* v. *Wilton,* 40 Ohio State, 516; *Banker* v. *Wabash County Commissioners,* 88 Ind., 267; *People* v. *Storking,* 50 Barb., 573; *Hill* v. *Charlotte,* 72 N. C., 55. On the other hand, the county is not liable for a misapplication of a fund of which the County Commissioners direct the disbursement, under the general power delegated to them by section 753 of *The Code,* in good faith, but under a misapprehension of the law. *Long* v. *Commissioners,* 76 N. C., 273.

If the plaintiff Board is entitled to recover judgment against the defendant Board, which has the general oversight of county government, it would follow that the Courts would be required, if it should become necessary, to enforce the levy of a sufficient tax upon the property of the county to replace the amount belonging to the school fund which has already been wrongfully but honestly expended for the support of the poor. The taxpayers of a county are under no legal obligation to submit to additional burdens in order to repay sums belonging to one fund that may have been, in good faith, mingled with another fund and diverted from the purpose for which it was intended. If, however, it had appeared that a part of the school fund had been transferred to the general fund of the county, and was still held by the County Treasurer, subject to the orders of the defendant Board, the plaintiffs would have been entitled to recover so much of the fund as was still unexpended, and to demand a writ of *mandamus* to compel the payment of such specific sum in order to its application to the purpose for which it was intended.

But it would seem that all of the money collected for educational purposes should have been paid over by the Sheriff to the County Treasurer in his capacity as treasurer of the Board of Education, and held by him, subject to the orders of said Board. *The Code,* §§ 2563 and 2554. The defendant

Board, as such, had no power over that fund (unless it was its duty to prosecute a suit to compel its payment to him as a part of the county school fund), and the Treasurer was not bound to transfer it, on the order of the County Commissioners, to the fund held by the county for general purposes. So that the misapplication of the fund was made by the treasurer of the Board of Education, and he is not a party to this action. He was required by law (*The Code*, §§ 2558 and 2559) to make the most minute reports of his receipts from all sources and his expenditures for all purposes, to the plaintiff Board.

As silence on the subject might lead to the bringing of almost innumerable actions against County Treasurers, we deem it proper to say, further, that, in our opinion, if the plaintiff Board had brought the action against the treasurer in his capacity as the custodian and disburser of its own funds, or upon his official bond, it would not have been entitled to recover. *Liles* v. *Rogers*, at this term.

For the reasons given, the judgment is          Reversed.