From the facts submitted it appears that the General Assembly, with a view of providing a special building fund to enable the counties of the State to properly maintain a six months school term as required by the Constitution, passed an act, Laws of 1921, ch. 147, in which the State Treasurer was authorized and directed to issue $5,000,000 coupon bonds of the State, sell the same, and from the proceeds advance to the several counties of the State a proportionate amount from time to time for the purpose of enabling such counties to acquire sites and to provide for building, equipping, and repairing the public school buildings, etc., adequate and necessary to properly maintain a six *Page 402 
months school, as contemplated and required by Article IX of the Constitution. The reasons and purpose of said enactment being set forth in the preamble as follows:
"Whereas the enrollment of children in the public schools of North Carolina has so greatly increased within the past two years that the entire school plant in a large majority of the counties must be greatly enlarged or rebuilt altogether, and in all counties school buildings are inadequate to provide accommodations for the children now attending; in many cases large numbers of children being crowded into small rooms, too unsanitary for right living, and too small to afford an opportunity for the teachers to give proper instruction to those anxious for an aducation [education]; and
"Whereas the larger type of community school for the rural districts should be constructed of a more permanent nature, and planned for a larger service in order that the school may serve the community (376) more effectively, the construction of a more permanent type of school building depending in most cases absolutely upon the State's opening a way for the counties to secure funds at a reasonable rate of interest for erecting school buildings sufficient to accommodate the children of school age, and to provide for the normal annual increase; and
"Whereas the smaller towns and consolidated rural districts must pay a high rate of interest on bonds they issue, and often experience much difficulty in disposing of them at par, and often are without adequate machinery for properly handling sinking funds, interest, and retiring the bonds."
The act then provides that the proceeds realized from sale of the bonds in question shall for the purposes indicated be loaned from time to time to the different counties in proportionate amounts, on application of county boards of education, such loans to be made only when approved by the board of county commissioners, and with ultimate approval also of the State Board of Education. Said loans shall be endorsed and secured by the vote or votes of the respective county boards of education, payable in twenty equal annual installments with interest, and at the same rate at which the money is secured by the State on the bond issue provided for. And said board of education shall provide in its May budget for a special tax, denominated the Special Building Fund Tax, sufficient to meet the annual installments payable upon the loans so made, and it is further provided that these loans to the counties shall constitute a lien on any and all school moneys due said counties from any special State appropriation, and on all school moneys *Page 403 
raised by taxation in the respective counties or school districts which may have borrowed of this fund from the county commissioners. Under the regulations established by the State Board of Education, pursuant to powers conferred by the Constitution and statutes applicable, before any loan is made from the fund in question, the county board of education and the board of county commissioners are required to make affidavit that the loan applied for is necessary and required to provide a six months school, etc.
There are various other provisions of the statute, looking to the integrity and preservation of this fund and its fair and equitable distribution to the several counties according to their needs, but this seems to be a sufficient statement to a proper apprehension of the questions presented in the record.
Pursuant to the requirements of the law, the State Treasurer has had the bonds in question prepared and has contracted to sell the same to defendant at a satisfactory price, the rate of interest being 4 1/2 per cent, and defendant resists payment on the ground that the act is invalid as in violation of Article V, section 4, of the Constitution, which prohibits the General Assembly from lending the State's credit (377) in aid of any association, person, or corporation except in aid of unfinished roads or of roads in which the State has a direct pecuniary interest, unless the subject shall be submitted to a direct vote of the people and approved "by a majority of those who shall vote thereon." And, second, as in violation of Article VII, section 7, of the Constitution, which prohibits municipal corporations from contracting debts and levying taxes except for necessary expenses, unless approved by a majority of the qualified voters therein.
The court being of opinion that the proposed bond issue would constitute valid obligations of the State, entered judgment that defendant comply with its contract of purchase, and defendant excepted and appealed.
After stating the case: Sections 1, 2, and 3 of Article IX of the Constitution, this being the article on Education, are as follows:
"SECTION 1. Religion, morality, and knowledge being necessary to good government and the happiness of mankind, schools and the means of education shall forever be encouraged. *Page 404 
"SEC. 2. The General Assembly, at its first session under this Constitution, shall provide by taxation and otherwise for a general and uniform system of public schools, wherein tuition shall be free of charge to all children of the State between the ages of six and twenty-one years. And the children of the white race and the children of the colored race shall be taught in separate public schools; but there shall be no discrimination in favor of or to the prejudice of either race.
"SEC. 3. Each county of the State shall be divided into a convenient number of districts, in which one or more public schools shall be maintained at least six months in every year; and if the commissioners of any county shall fail to comply with the aforesaid requirements of this section, they shall be liable to indictment."
And after making various other provisions in furtherance of the general purpose, the article closes with the following, designated as section 15: "The General Assembly is hereby empowered to enact that every child, of sufficient mental and physical ability, shall attend the public schools during the period between the ages of six and eighteen years, for a term of not less than sixteen months, unless educated by other means."
A proper consideration of the article will clearly disclose that (378) its provisions are mandatory, imposing on the Legislature the duty of providing "by taxation and otherwise for a general and uniform system of public education, free of charge, to all the children of the State from six to twenty-one years," that the school term in the various districts shall continue for at least six months in each and every year, and that the counties of the State are recognized and designated as the governmental agencies through which the Legislature may act in the performance of this duty and in making its measures effective. In various decisions of the Court the importance and imperative nature of these constitutional provisions have been upheld and emphasized.Board of Education v. Board of Comrs., 178 N.C. 305; Board of Educationv. Board of Comrs., 174 N.C. 469; Collie v. Comrs.,145 N.C. 170.
Speaking to the subject in the Granville County case, wherein it was held that high schools could well be made a part of the public school system, the Court said: "We find nothing in this article of our Constitution or elsewhere, which in terms restricts the public schools of the State to the elementary grades or which establishes any fixed and universal standard as to form, equipment, or curriculum. On the contrary, in view of the prominent placing of the subject in our organic law, the large powers of regulation and control conferred upon our State board, *Page 405 
extending at times even to legislation of the subject, the inclusive nature of the terms employed, `to all the children of the State between the ages of six and twenty-one years of age,' together with the steadfast adherence to this patriotic, beneficient purpose, throughout our entire history, it is manifest that these constitutional provisions were intended to establish a system of public education adequate to the needs of a great and progressive people, affording school facilities of recognized and ever increasing merit to all the children of the State, and to the full extent that our means could afford and intelligent direction accomplish."
And in Collie v. Comrs., supra, wherein it was held that this obligation to maintain a six months school (then four) should prevail notwithstanding it required a tax levy over and above the limitations on amount of taxation elsewhere appearing in the Constitution, AssociateJustice Brown, delivering the principal opinion, said, among other things: "The reasons which induced the people to adopt Article IX are set forth in its first section, and they are so exalted and forcible in their nature that we must assume that there is no article in our organic law which the people regarded as more important to their welfare and prosperity. This conviction is greatly strengthened when we find that the only criminal offense defined and made indictable by the instrument is one created especially to enforce obedience to its specific commands in respect to the establishment of four months schools. In commenting upon this, Mr. Justice Avery well says: `It is difficult to understand why this wide departure from the usual course was made, (379) unless we interpret it as emphasizing the intent of the framers of the Constitution that the officers held subject to this unusual liability should have power coextensive with their accountability.'"
And in the concurring opinion, Walker, J., said: "It is not for me to say, in construing that instrument, whether its provisions make for the best interest of the people. I must ascertain the will of the people from what they have said — and not from what I think they should have said — not meaning at all to imply that they have not spoken wisely, and truly expressed their intention. If there is a deliberately conceived and carefully stated principle in their Constitution, and one which it is perfectly evident they desired to be clearly understood and rigidly enforced, it is that embraced in sections 1, 2, and 3 of Article IX, in regard to the schooling of the children of the State. They intended that the State should no longer be debased or retarded in its progress by the ignorance of its people. It is plain that those who wrote these sections knew, as any intelligent citizen knows, that the surest way to obtain good government, and to enjoy it, is to know how to appreciate its blessings and to be able to perpetuate it by a proper and *Page 406 
intelligent use of it. When it was, therefore, declared that the people must be educated it was just as binding an injunction that the means to that end must be supplied by taxation as it was that the counties or even the State government should be supported."
And these comments are further strengthened by the fact that a recent amendment to our Constitution, providing that the total of the State and county tax on property shall not exceed 15 cents on the $100 value, except when the county property tax is levied for a special purpose, and with the special approval of the General Assembly, contains the exception that the restriction shall not apply to taxes levied for the maintenance of the public schools for the term required by Article IX of the Constitution.
This being the law applicable, we can see no reason against the validity of this proposed bond issue, the purpose being to procure funds to construct the necessary school buildings for the proper maintenance of the six months school term in the various counties of the State. And we are not impressed with the objection that the measure is in violation of section 4, Article V, of the Constitution, whereby the General Assembly is prohibited from "lending the credit of the State in aid of any person, association, or corporation, except to aid the completion of the railroads unfinished at the time of the adoption of the Constitution, or in which the State has a direct pecuniary interest, unless by a vote of the people." That, as its terms import, is an inhibition on giving or lending the credit of the State to third persons, individual or (380) corporate, and of the kind contemplated in the provision, and can have no proper application to a bond issue necessary to the lawful maintenance of a State-wide school system required of the State Government and imposed as a primary duty on the State itself by express provision of the Constitution.
Nor can the second objection of appellant be allowed to prevail, that the statute will impose upon the counties of the State an obligation to repay the amount of money loaned to them, without a vote of the people therein as required by Article VII, section 7, of the Constitution. It is said by a writer of approved merit that a constitution shall be construed on broad and liberal lines, and so as to give effect to the intention of the people who adopted it. Black on Interpretations (3 ed.), pp. 75 and 76. And to that end it is held that the instrument should be considered as a whole and construed so as to allow significance to each and every part of it if this can be done by any fair and reasonable intendment.
Applying the principle, the restrictions contained in this Article VII, section 7, which prohibits counties, cities, and towns, or other municipal *Page 407 
corporations, from contracting debts or levying taxes except for necessary expenses unless approved by a majority of the qualified votes therein, must be understood to refer to debts and taxes in furtherance of local measures and do not extend to a State-wide measure of the instant kind, undertaken in obedience to a separate provision of the Constitution, and in which the counties are, as stated, expressly recognized as the governmental units through which the general purpose may be made effective.
The position is presented and clearly approved in principle in theCollie case, supra. There and at that time there was, in Article V, section 1, of the Constitution, a limitation on the rate of taxation for general State and county purposes, which at times, and in that instance, operated to prevent the maintenance of the public schools for the constitutional term of four months (since changed to six), and the Court held that in order to harmonize the two provisions and to allow each its proper significance, the general limitation must yield so as to permit a sufficient tax levy to maintain a school for the specified school term expressly required by Article IX of the Constitution. In the various decisions of the Court in which it has held that the incurring of debts, levying of taxes by counties or other municipal corporations were not to be regarded as necessary expenses within the meaning of Article VII, section 7, of the Constitution, they were either cases of cities or towns or special districts, or the purpose was to provide means for maintaining schools longer than the constitutional term, or they were cases of some school in a special locality enacted without any reference to maintaining a State-wide school system for any specified term, and in which the constitutional requirement in question was in no way presented or considered. The distinction between local measures of the kind presented in the decisions referred to and that in the instant case, was foreshadowed in Comrs. v. State Treasurer, 174 N.C. at p. 141. (381) That was a case in which it was sought to impose upon the counties of the State the expenses of a strictly localized road system, under the exclusive governance and control of the local authorities. And in answer to the position that the school authorities of the State were advancing aid to local effort the Court said:
"The suggestion that the State extends its aid in offering educational advantages to the people throughout its territory, and that it is at times made effective in certain designated localities, to our minds is not apposite to the question decided in this appeal, and not helpful to its proper solution. That is recognized and dealt with as a State-wide system under the control of general State officers, made imperative by special constitutional provision; and while aid is at times extended to certain *Page 408 
localities where need is pressing, and through the agency of local officials, they are acting, as stated, in promotion of the general system and are in fact and truth performing official duties to that end."
And in Hollowell v. Borden, 148 N.C. 255, a case where the levy of a school tax for the city of Goldsboro Graded School without a popular vote was disapproved, Associate Justice Brown, distinguishing the decision fromCollie's case, supra, said: "There is nothing in the recent decision of the Court in Collie v. Comrs., 145 N.C. 170, which sustains the idea that our public school system is a necessary municipal expense. On the contrary, the opinion regards the public school system as a State institution, founded on the Constitution and governed and controlled by the General Assembly. In order to reconcile clauses of the Constitution apparently conflicting, we held in that case that the provision for four months school terms was mandatory, and that in order to give effect to it the General Assembly could compel the counties of the State, when necessary, to disregard the limitation upon taxation contained in Article V, section 1."
While we thus uphold the proposed bond issue as being in the reasonable exercise of the powers conferred by the Constitution, it must not be understood that the exercise of these powers is in all cases arbitrary and without limit as to amount. "They shall maintain one or more school terms at least six months in every year" is the requirement of the Constitution, showing that this number must be in reasonable proportion to the need. And if the school authorities, departing from any and all sense of proportion, should enter on a system of extravagant expenditure, clearly amounting to manifest abuse of the powers conferred, their action may well become the subject of judicial scrutiny and control.
But no such condition is presented in this record. On the contrary, there is every reason to believe and know that the preamble of the present statute is well within the facts and in no way exaggerates the need. A position that is emphasized by the fact that our Legislature, (382) under section 15 of Article IX, has in specified instances made it indictable where there is a willful failure to attend the public schools. C.S. 5758 et seq.
It would present, indeed, an incongruous and most deplorable condition if the General Assembly, having thus provided for a compulsory attendance on the public schools, were not allowed to make provision also for adequate and suitable housing for the purpose. And we are of opinion that the proposed bond issue, with the requirement that the loans made to the counties be repaid to the State is throughout a constitutional enactment, and in the reasonable exercise of the powers *Page 409 
conferred on the authorities to enable them to properly maintain the public schools of the State.
There is no error, and the judgment of the court holding this a valid indebtedness is
Affirmed.
Cited: Coble v. Comrs., 184 N.C. 355; Provision Co. v. Davies,190 N.C. 13; Henderson v. Wilmington, 191 N.C. 279; Tate v. Bd. of Ed.,192 N.C. 520; Frazier v. Comrs., 194 N.C. 62; Owens v. Wake Co.,195 N.C. 136; Yarborough v. Park Comm., 196 N.C. 293; Bd. of Ed. v. Walton,198 N.C. 331; Julian v. Ward, 198 N.C. 482; School Comm. v. Taxpayers,202 N.C. 299; Reeves v. Bd. of Ed., 204 N.C. 78; Powell v. Bladen County,206 N.C. 50; Fuller v. Lockhart, 209 N.C. 69; School Dist. v. AlamanceCounty, 211 N.C. 223; Moore v. Bd. of Ed., 212 N.C. 502; Bridges v.Charlotte, 221 N.C. 480.